### BUXTON *v.* CHESTERFIELD.

Chapter 43, Sts. of 1877 (G. L., c. 82, s. 9), imposes no new liability on towns in relation to the support of paupers. It was intended, and its only effect is, to relieve a parent from becoming a pauper by reason of assistance rendered to his unemancipated child above the age of twenty-one years as a pauper.

ASSUMPSIT, for the support of the plaintiff's daughter since July 14, 1877. Facts found by a referee. The plaintiff has had a settlement in Chesterfield since 1860. His daughter is thirty-two years old, and has a settlement in C. derived under him. She was rendered imbecile from disease in infancy, is helpless, and always has been poor, and unable to support herself. By reason of her infirmity, it has been fit and proper that she should remain in the family and under the control of her parents, and the plaintiff has always supported her in his family at his own expense, but has

been unable to do so since July 14, 1877, without diminishing his estate. In April, 1878, he claimed that the town was liable for her support under the statute (*c.* 43) passed July 14, 1877, and requested aid from the overseers of the poor from that date. The overseers refused to render him any aid, and neither the town nor its officers ever agreed to pay the plaintiff for her support. If the plaintiff can recover upon this statement of facts, his damages are assessed at $5 per week, from such time as the court shall hold him entitled to recover to the date of the writ, with interest from the latter date. Both parties moved for judgment on the report.

*D. H. Woodward*, for the plaintiff. The various statutes, beginning earlier than the decision in *Mace* v. *Nottingham-West*, 1 N. H. 52, in 1817, to the present time, have provided that persons standing in need of relief are to be supported by the overseers of the poor in the town in which they happen to be. It has always been the duty of the overseer of the poor to relieve and maintain those who stand in need of relief, and in discharge of these duties his acts are official. If he wilfully refuses to give aid when he should, he is liable to indictment. Clothed as he has always been with these powers from the direct language of the statute, the courts, by repeated decisions, have declined to meddle with his doings in any suit in favor of those who have afforded relief. And so, in conformity to the language of that statute, and bearing upon the duties incumbent upon such an officer, we have the decisions in *Mace* v. *Nottingham-West, supra, Mason* v. *Bristol*, 10 N. H. 36, *Otis* v. *Strafford*, 10 N. H. 352, and *French* v. *Benton*, 44 N. H. 28. The doctrine of these cases is not now in question, though the same has often been disputed, as appears from the numerous decisions in our reports.

The statute of 1877, on which this action is founded, is as follows: "Sec. 1. Whenever, by reason of any infirmity of body or mind, it is fit and proper that children should remain in the family and under the control of a parent after they arrive at the age of twenty-one years, and such parent is unable to support such children without diminishing his estate, such children shall be supported by the town or county by law liable for their support, and the parent shall not be regarded or deemed a pauper by reason of the support so furnished to such idiotic or feeble adult child or children residing in his family and under his control." The report of the referee finds that all the conditions of this statute here exist, and presents to the consideration of the court the case of a parent having upon his hands an adult child, imbecile in both body and mind, entirely helpless, and incapable of providing in any degree for her own wants, and for whose support he is not by law, upon the facts found in the report, liable ; and yet he cannot get rid of supporting the child, and (as the defendants say) cannot have any relief if he does. There are none who will take her from his hands, even if

it were fit and proper that they should. He went to the overseers and besought them to do something for him under this statute, and told them that he ought to have some help, but they positively declined. There was and is no alternative for the plaintiff, as seen from the defendants' position, but to turn her upon the streets— an act of barbarism too shocking for contemplation.

There would have been no cause for fear if our court had held, under our early statutes, that expenses necessarily incurred by an individual for the relief of a pauper might be recovered in a suit against the town, for such had been the approved statute remedy of Massachusetts where no injury has been discovered. Mass. Rev. Stats. of 1836, *p.* 372, *s.* 18. But our decisions are not based, as we understand, on that ground, but on the principle that when the law commands an officer to do an act and he does not do it, some one else cannot step in and do it and have a remedy against the principal. The reading of Gen. Laws, *c.* 82, *s.* 1, that " he shall be relieved and maintained by the overseers of the poor," is the imposition of an official duty. Now, for the non-performance of this duty, all that our cases say is, that the town shall not be liable in a civil suit. The argument is, that towns are not liable by the common law to support paupers, and without this liability no promise can be implied.

The statute of 1877 imposes a liability on the town. The words are, " such children shall be supported by the town," &c. The language is imperative and unequivocal. This liability must exist from a fair construction of the law. The words do not admit of any other interpretation. When the law says a town shall do a thing, it is not of the office of a town officer to positively decline. It belongs to the court to see that the law is administered, and not to a town officer to say that he will decline it and leave the court powerless. The spirit and intention of this law are, that the defendants shall maintain this idiotic child. The words " shall be supported by the town " do not mean that it shall be so if the overseers of the poor shall think best. It is not discretionary. To say that the overseers of the poor are the only persons to determine this question, is to say that the legislature has made a party in interest an arbiter of his own cause, and from which there is no appeal. The statue places no such tribunal between this plaintiff and the court. The language of this statute having fixed a liability, the plaintiff can recover. *Sanborn* v. *Deerfield*, 2 N. H. 251.

Before the passage of the law of 1877, a child like the one in question had been supported by the town of Croydon (*Croydon* v. *Sullivan County*, 47 N. H. 179), and from that case it is claimed that the law of 1877 made no change except upon the civil *status* of the parent. Now, inasmuch as this class of unfortunate beings were by law to be relieved and maintained by the overseers of the poor, why did the legislature particularly say, in 1877, that they " shall be supported by the town," if they did not intend to change

the law from what it was in that case? It is folly to suppose that a legislature, designing simply to save the parent from the civil effect of pauperism, would have expressed itself in such language. And it is equally folly to suppose that the legislature did not intend to extend to these unfortunate ones a more ample care and protection than were to be found in the earlier law. And if they intended that the overseers of the poor should still continue to be arbiters in their own causes in this class of cases, why did they not say such children " shall be relieved and maintained by the overseers of the poor," instead of using the language of the present statute? And if this statute has nothing more to it than what is claimed for it, we should have expected it only as an amendment to Gen. St., *c.* 74, *s.* 1, and not as an independent law.

It is not necessary that the statute should say in express words that an action may be brought, since it arises from the doctrine of implied municipal liability,—not from any contract, but from the general obligation to do justice which binds all persons, whether natural or artificial. In *Seagraves* v. *Alton*, 13 Ill. 371, a contract was implied on the part of a city which was bound to support its paupers, and which had refused to pay a person who had furnished a pauper with necessaries. The city had refused to support the pauper, and yet a promise was implied. This implication was a pure fiction, to support what the court regarded as a just claim. We apprehend that the implied promise found against the refusal of the city to maintain the pauper in *Seagraves* v. *Alton* rests upon a statutory liability like that established by our law of 1877. In raising this implied promise, the law makes no distinction between a corporation and an individual. *Danforth* v. *Company*, 12 Johns. 227. We ask for no construction of our statute that does not harmonize with its language and its humane spirit. We seek no obligation that the law itself does not impose. It is only in denying the plaintiff judgment on the report, that injustice is done and the purpose of the law thwarted.

*Batchelder & Faulkner*, for the defendants.

SMITH, J. Towns are liable for the support of paupers, because the statute has imposed that duty upon them. There was no such liability at common law. The duty of discharging this obligation is devolved by statute upon the overseers of the poor, and it is only through their action that the town can be made liable to a person who furnishes relief to a pauper. However great the moral obligation to afford relief, or however pressing the emergency, overseers are responsible to the public for gross neglect of their official duty, but no action can be maintained against the town upon their implied promise to do what it was their official duty to do. *Mace* v. *Nottingham-West*, 1 N. H 52; *Woodes* v. *Dennett*, 9 N. H. 55; *Mason* v. *Bristol*, 10 N. H. 36; *Otis* v. *Strafford*, 10 N. H. 352; *French* v. *Benton*, 44 N. H. 28.

The only question is, whether *c.* 43 of the Laws of 1877 (G. L., *c.* 82, *s.* 9) has changed the liability of towns in this respect.    We do not think the legislature intended to impose any new liability on towns, either as to the class of persons to be assisted, or as to the manner of rendering such assistance.    The language of the statute passed, perhaps in consequence of the decision in *Croydon* v. *Sullivan County*, 47 N. H. 179, is, "such children shall be supported by the town or county liable for their support."    This did not create a new class of persons to be assisted, nor impose a liability on towns which they were not already under.    Gen. St., *c.* 74, *s.* 1; G. L., *c.* 82, *s.* 1.

As there was no express contract on the part of the defendants' overseers to pay for the support of the plaintiff's daughter, the defendants are entitled to

*Judgment on the report.*

ALLEN, J., did not sit: the others concurred.